UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BRODHEIM, | No. 2:06 cv 02326 LKK GGH P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| KATHLEEN DICKINSON, et al., | |
| Respondents. | |

*Introduction and Summary*

  Respondent makes her motion to dismiss this aged habeas petition concerning parole eligibility hearings in 2003 on several bases. For the reasons stated herein, the undersigned finds that: the motion should be denied in that habeas corpus jurisdiction exists for the remaining claims that bias infected petitioner's 2003 parole eligibility hearings, but granted with respect to his generic equal protection claim as habeas jurisdiction is improper for this claim. The motion should be denied in every other respect.

*Procedural Facts*

  The petition in this case, originally filed in the Northern District of California on May 10, 2006, attacks a 2003 decision (final in January 2004) of the then Board of Prison Terms (BPT),

now Board of Parole Hearings (BPH), denying parole eligibility for petitioner, a person convicted of first degree murder in 1982 (25 years to life). The petition also attacks the asserted failure of the Governor at the time (Schwarzenegger) to reverse the BPT denial of parole eligibility.

Complicating matters, petitioner had also filed a civil rights action in 2005, primarily complaining that the parole eligibility hearings for those with indeterminate sentences (those convicted of murder for the most part) were a sham with a predetermined denial. Governor Davis, Governor Schwarzenegger's predecessor, had once famously proclaimed that no murderer would be found eligible for parole on his watch. The civil rights action (amended complaint of August 30, 2005) primarily mirrored the allegations of the 2006 habeas corpus petition with a few additions relating to standard of proof for BPH hearings, failure of BPH to give a statement of reasons when denying parole eligibility, *ex post facto* nature of the law relied upon by the BPH when reviewing cases, reliance on matters outside the record when characterizing the conviction, and scheduling Brodheim's next parole eligibility hearing with a three year delay. Further complicating matters, the civil rights action was premised upon issues, in part, set forth in the asserted class action, Gilman v. Brown, CIV-05-0830 LKK GGH. Recently in 2012, (Brodheim's) civil rights action, believed subsumed for the most part by the Gilman class action or otherwise moot, was dismissed, but upon reconsideration has now been revived and severed from that action. The Brodheim civil rights action now proceeds on the Fourth Amended Complaint. The civil rights action does not affect the court's determination of the motion to dismiss in this habeas action, and further discussion of the pending civil rights action is omitted.

This habeas action proceeded until it was stayed on March 16, 2009, for the reason that the Ninth Circuit was reviewing *en banc* the existence/parameters of the federal and state liberty interests in parole eligibility of California prisoners serving indeterminate terms. See Docket #s 45 and 46. Hayward *en banc* was decided in 2010 , (Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010 (en banc)), holding in essence that the federal courts could enforce the California state liberty interest in parole eligibility with the major issue being whether "some evidence" existed for a determination by the BPT/BPH that releasing an indeterminate prisoner on parole would endanger the community. Based on that decision and the facts of this case, a recommendation

was made that the BPT decision lacked "some evidence" to conclude that petitioner herein would be a danger if released. (Dkt. # 51.) The Recommendation was adopted by the district judge, (Dkt. # 57), and an appeal was subsequently filed with the Ninth Circuit. During the pendency of the appeal, the Supreme Court decided Swarthout v. Cooke, __U.S.__, 131 S. Ct. 859 (2011), which repudiated any notion that the federal courts could enforce state liberty interests as well as previous findings that the assumed federal liberty interest in parole eligibility encompassed a "some evidence" requirement. Therefore, the grant of petitioner's habeas petition was reversed, and remanded to consider other issues which had not been decided due to the previous, dispositive finding of a lack of "some evidence."

During these proceedings, petitioner continued to have parole eligibility hearings, a further denial by the BPH in 2007, and finally a grant of parole eligibility on January 11, 2012. Unfortunately for petitioner, on review of the eligibility grant by Governor Brown, the initial BPH grant was reversed. Thereafter, petitioner was *again* found BPH eligible for parole, January 8, 2013, and this second favorable-to-petitioner decision awaits a final decision upon Governor Brown's review. That decision was thought due in June of this year, but has not been forthcoming; at least the parties have not advised the court of such.

*Issues*

Respondent makes the motion on several grounds:

1. No habeas corpus jurisdiction exists for the claims remaining in Brodheim's parole eligibility proceeding;
2. In any event, the habeas case should be dismissed and the remaining claims proceed in the civil rights action (either his individual civil rights action or the *Gilman* class action);
3. Brodheim's equal protection claim is but a due process claim in disguise, and should be summarily dismissed.

Before reaching respondent's stated claims, the undersigned will again reiterate why the 2003 claim is not moot despite the fact that Brodheim has had two favorable parole eligibility decisions at the BPH level, with the most recent favorable decision pending Governor Brown's

3

review.

*Discussion*

The Claim Is Not Moot

It should seem odd that this case is not moot in that petitioner has received two favorable BPH reviews, or at the very least not ripe due to the pending Governor's review of his most recent BPH decision. However, one fact stands in the way—the date petitioner's victim was murdered.[1]

In Biggs v. Sec. CCRC, 2011 WL 5024481, aff'd on other grounds, 717 F.3d 678 (9th Cir. 2013), Magistrate Judge Delaney explained why those who committed their murders after January 1, 1983, thereby incurring a potential lifetime parole, had previously unfavorable BPH decisions mooted out by a subsequent favorable determination.[2] That is, a petitioner could not claim that because of the unfavorable parole eligibility decision, he was not able to commence, and finish, his parole term at the earliest possible time—potential lifetime parole is viewed as lifetime parole. However, the situation is different for those petitioners who committed their indeterminate sentenced offense prior to 1983. Previous to that time, the law established only a five year parole term subject to extension if events on parole so warranted. Thus for those petitioners, the possibility of a non-lifetime parole term, i.e., five years only, was a fact, subject only to a parolee's bad behavior, and this fact kept the older, non-favorable BPH decision from becoming moot, i.e., it would be possible that petitioner would have no parole term to serve after he was finally released. See also Masoner v. Kane, 2011 WL 863289 *4 (C.D. Cal. 2011).

Petitioner falls into this latter category since his victim's murder predated the "lifetime" change in the parole statute. Petitioner could validly argue that if he were to be found suitable for parole in 2003 in a retrospective BPH/Governor review proceeding, his parole term would be non-existent. Even if he were to presently receive a favorable Governor's review of the most

---

[1] The undersigned previously found that the action was not moot, and that a decision on the merits of the 2003 determinations was still possible in that *at the time* no favorable BPH decision had been made; the possibility of another hearing to remedy the defects, if any, in the 2003 proceedings (possibly repeated in the 2007 proceedings) was still a viable possibility.

[2] The State chose not to appeal on the mootness grounds discussed by Judge Delaney, see Biggs, 717 F.3d at 681 (n.2)

recent, favorable BPH decision, the parole term issue keeps the case from becoming moot/unripe.

<u>Habeas Corpus Jurisdiction Is Appropriate in This Case for Bias Claims, But Not for Equal Protection</u>

The cacophony of cases regarding habeas vs. civil rights jurisdiction has resulted in a situation where district courts always act at their peril in choosing to proceed in habeas and/or civil rights jurisdiction as the jurisdictional rules change from year to year and in situational contexts. While clearly a new paradigm should be fashioned to separate the two jurisdictional bases,[3] that cannot be accomplished at this level in this case.

Under current Ninth Circuit and Supreme Court jurisprudence, habeas jurisdiction is at once almost limitless, e.g., if there exists a likelihood that the decision under review *might* reduce a sentence, Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (expungement of errant disciplinary convictions), and also very restrictive—civil rights jurisdiction is appropriate, but *not* habeas, unless a determination would *necessarily* result in release. Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003). However, it has been also held that habeas jurisdiction can also substantially overlap with civil rights jurisdiction. Docken v. Chase, 393 F3d 1024 (9th Cir. 2004). It is instructive to review some various cases on the issue. <u>See</u>:

Butterfield v. Bail, 120 F.3d 1023-24 (9th Cir. 1997) (claim challenging use of allegedly false material in a prisoner's file which was used to deny parole necessarily implicates the continuation of confinement, and is only properly (initially) reviewed in habeas corpus).

Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997): expungement of sex offender labeling, although giving petitioner a "ticket" to get parole board consideration, is properly brought in civil rights because it will in no way *guarantee* parole.

Wilkinson v. Dotson, 544 U.S. 74, 125 S. Ct. 1242 (2005): claim that procedures used in parole proceedings were unconstitutional (dates for establishing further hearings, too few parole members at hearings, denying adequate opportunity to speak) can be brought in civil rights

---

[3] Habeas and civil rights jurisprudence utilize entirely different standards of adjudication—compare the AEDPA "unreasonable" deference given to state courts in habeas with a civil rights action where federal issues are decided *de novo*. Also, habeas cases require exhaustion with the highest state court, while civil rights requires no state court exhaustion at all.

because a favorable ruling will only result in reconsideration of parole eligibility at a new hearing.

Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) : "Thus, *Neal* accords with our holding here that *habeas jurisdiction is absent*, and a section 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence." (emphasis added) (disciplinary procedures challenged—failure to allow witnesses—cognizable only under section 1983).[4]

Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004) (noting the growing confusion in this jurisdictional jurisprudence): habeas and civil rights jurisdiction is not mutually exclusive; in a case where a rule changed the time period between parole reviews and gave rise to an *ex post facto* claim, such a process rule was cognizable for review in habeas jurisdiction. Ramirez was distinguished because it dealt with internal disciplinary hearings and not parole.

Skinner v. Switzer, __U.S.__, 131 S. Ct. 1289 (2011) (success in a suit to permit DNA testing which is intended to be utilized in a later habeas action (if favorable) does not "necessarily" indicate that a conviction will be overturned; section 1983 jurisdiction is proper.

Blair v. Martel, 645 F.3d 1151, 1157 (9th Cir. 2011): claim that state appeal of a criminal conviction was being unduly delayed, could only be brought in civil rights since a favorable due process ruling could only mean a speedier appeal, and did not necessarily spell speedier release (attempting to distinguish between "substance" and "process" in a criminal case).[5]

---

[4] The undersigned believes that Ramirez followed to its logical end may strip the federal courts of any habeas jurisdiction in all prison disciplinary proceedings. After all, the only issue in a section 1983 action or habeas challenging the result of a prison disciplinary hearing where time credits are at issue is some type of constitutional error which impacted the "guilty" finding, e.g., not being allowed witnesses, improper notice of a violation, etc. Perhaps, habeas jurisdiction would remain for a determination that the evidence used to convict was insubstantial (lacks "some evidence"), but that is not certain. Ramirez' rule that where the constitutional error itself does not increase a prisoner's sentence, habeas jurisdiction is absent, seems to admit of no circumstance where habeas jurisdiction would lie. To the undersigned, it would seem that for practical purposes that where time credits are taken away, the effective prison sentence has been lengthened. Yet, Ramirez has not been overruled.

[5] Thus, according to the principle announced in Blair, procedural (process) issues such as failure to afford a speedy trial, or errant closure of a courtroom, should not be brought in habeas corpus because these errors have nothing to do with the substance of the case. Yet, we know that this is

Thornton v. Brown, __F.3d__, 2013 WL 3927759 *5 (9th Cir. Jul. 31, 2013) (challenge to a condition of parole which does not affect speedier release from parole as a whole, properly brought within section 1983 jurisdiction).[6]

Again, while the undersigned has shared his confusion concerning the intersection of habeas and civil rights jurisdiction, a decision nevertheless must be made cobbling together the above authority with the issues remaining in this habeas action. The totality of issues brought in this habeas petition were:

1. the parole authority's arbitrary and continued reliance on unchanging factors;
2. the parole authority's decade long policy of rejecting the parole applications of every male convicted of first degree murder;
3. the parole authority's policy of systematically construing first degree murder as sufficiently exceptional to warrant a denial of parole;
4. the parole authority's decision was based on findings (a) not supported by the requisite evidence, (b) otherwise arbitrary, and or (c) discriminatory under the Americans with Disabilites Act;
5. the parole authority's failure to give petitioner's parole eligibility proceeding constitutionally inadequate individualized consideration;
6. the parole authority was not sufficiently neutral and detached, but rather systematically biased in its decision making;

---

not true from years of experience with litigating habeas corpus cases with all sorts of these process issues. The Sixth Amendment is nothing but constitutionally guaranteed *process*. Yet process is not fair game in habeas? Unless Blair is limited to the appellate sphere, it would seem that Blair departs from the seminal language that habeas jurisdiction is appropriate when a ruling would "necessarily imply" the invalidity of a conviction or sentence—something that process errors can certainly do.

[6] The difficulty the undersigned has with the "speedier release" language is that such is not the same as "necessarily implies the invalidity of a conviction or sentence," the traditional touchstone of habeas corpus jurisdiction. The vast majority of habeas remedies do not guarantee speedier release, see Haggard v. Curry, 631 F.3d 931, 937 (9th Cir. 2010) (parole eligibility context), although habeas rulings favorable to the petitioner generally imply, or outright express, the invalidity of the conviction or sentence. If parole is viewed as the sum of its conditions, and part of the "sentence," then a striking of a condition of parole necessarily implies the invalidity of parole, at least in part.

1     7.  petitioner's equal protection rights were violated.

2     The district court judgment resolved issues 1, 4(a) (b), and 5.  After this case was remanded
3 from the Ninth Circuit post-<u>Swarthout</u> to ascertain the validity of any-non "some evidence"
4 claims, the undersigned ordered petitioner to indicate what issues he believed were left to be
5 decided.  At Dkt. 77, petitioner indicated that the only issues remaining were 2, 3, and 6
6 (collectively systemic bias claims), and Claim 7—equal protection.  The ADA claim, 4(c), was
7 not referenced as being a remaining claim, and the undersigned will not further address this
8 problematic claim.

9     Of course, petitioner's goal, in habeas or civil rights, is to obtain a new BPH hearing in
10 lieu of the one decided in 2003, or to obtain a new Governor's hearing to reverse the unfavorable
11 2003 result.  In order to do that, petitioner asserts in Claims 2, 3 and 6 that the BPH/Governor's
12 bias, utilized across the board, affected petitioner's own 2003 proceedings.  While any ruling in
13 habeas or civil rights on these issues will not result in a speedier release, only a new hearing at an
14 appropriate level, it is difficult to conceive that bias affecting a substantive result does not,
15 nevertheless, "necessarily imply the invalidity" of the 2003 proceedings.  However, if
16 "guaranteed" "speedier release" is the decisional point, <u>Ramirez</u>, <u>Blair</u>, <u>Thornton</u>, then civil
17 rights is the only appropriate way to adjudicate.  If the decisional point is "implied invalidity,"
18 <u>Butterfield</u>, habeas is the only way to go.  If the critical issue is only whether a determination of
19 these issues "may" effect a speedier release, <u>Bostic</u> indicates habeas is appropriate.  If we are
20 looking only at substance versus process, <u>Blair</u> is inconclusive because a biased adjudicator issue
21 is both one of substance (infects the decision) and process (what factors may be utilized in parole
22 eligibility proceedings).

23     The undersigned chooses, however, to take the middle ground of <u>Docken</u> and perhaps
24 <u>Wilkinson</u> for issues 2, 3, and 6 which hold that habeas and civil rights jurisdiction, can, and in
25 many cases do, overlap.  This choice would seem to be especially appropriate in that the bias
26 alleged is directed to case-specific bias of petitioner's BPT (BPH) panel, and is asserted to be a
27 systemic bias applied across the board.  Although systematic defect is better addressed in a civil
28 rights action in the view of the undersigned, it must be also said that a determination of systemic

bias applied to petitioner's 2003 proceedings would necessarily implicate the validity of those proceedings.  Finally, Docken itself was a parole case, and Ramirez was distinguished as simply a prisoner disciplinary proceeding.  This case is more situationally allied with Docken.

Thus, respondent's motion to dismiss the habeas action should be denied with respect to Claims 2, 3, and 6.  If respondent believes that the civil rights and habeas actions should not proceed concurrently on bias claims, respondent may move to stay one or the other.

That leaves Claim 7, equal protection.  This claim, commencing at page 73 of the Petition is relatively undeveloped, and candidly, is confusing.  This claim appears to posit the situation of convicted "habitual offender" and "multiple offender" defendants "concurrently convicted of first degree murder," after parole eligibility has been set, with those persons who are awaiting a favorable parole eligibility finding having been simply convicted of first degree murder.  The claim also decries the fact that at one time before sentencing changes took effect in California in the early 1980s, first degree murderers were paroled at a fairly liberal rate, and relatively soon after conviction, compared to the "no parole" policy which took effect thereafter for parole eligibility findings.  Respondent argues in the motion to dismiss in conclusory terms that the equal protection claim is simply more of the same due process argument that comprise the previous claims.

Respondent's argument may or may not be correct, but the undersigned is unwilling at this point to summarily dismiss this claim which has not been the subject of detailed merits briefing.  Moreover, the primary point of the motion to dismiss is whether such a claim, in any event, is subject to habeas or civil rights jurisdiction.

This equal protection claim is certainly much more tangential with respect to "necessarily implying the invalidity" of petitioner's 2003 parole eligibility hearing.  Indeed, the issues are not tied to any specific hearing; they are generic and could be made at any time, before, during or after a parole eligibility hearing.  A favorable ruling on the equal protection claim vis-à-vis petitioner would work a substantial change in the way the entire parole system is operated with respect to first degree murderers, and would require the striking of certain California statutes.  It may be, if petitioner is successful, that he would not even need a parole eligibility hearing to have

his parole status further considered, or at the very least, any further parole eligibility hearing would be greatly different in substance from what is considered today. Like the plaintiff in Skinner, Brodheim would simply take a favorable ruling on the equal protection claim to use in a later action seeking release. Given the above canvas of authority regarding appropriate jurisdiction, the undersigned cannot find that habeas jurisdiction, which after all, is directly tied to a specific decision, is at all appropriate for this equitable claim.

Deciding the Merits on Summary Dismissal

With respect to the claims for which this court maintains jurisdiction (2, 3 and 6—the bias claims), respondent requests that the court review them for the purposes of summary dismissal. Federal Habeas Rules, Rule 4. Respondent briefly asserts that AEDPA deference to state court decisions made on the state court record precludes any ability of petitioner to prevail on his bias claims.

The undersigned has presently scheduled briefing on petitioner's motion for evidentiary hearing. It is best to address respondent's concerns and the ability of the federal court's to hold evidentiary hearings outside the state court record on that motion, and not on a summary dismissal.

*Conclusion*

IT IS HEREBY RECOMMENDED that insofar as respondent has moved to dismiss the bias claims (remaining claims 2, 3, and 6), the motion be DENIED; with respect to the equal protection claim (7), the motion be granted and this claim be DISMISSED without prejudice. These Findings and Recommendations are directed at Dkt. # 79.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are

/////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 27, 2013

                                              /s/ Gregory G. Hollows

                                    UNITED STATES MAGISTRATE JUDGE